FILED

04/09/2020

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2019 Session

## STATE OF TENNESSEE v. BARENTON BARNETT

**Appeal from the Criminal Court for Polk County**
**No. 17CR118        Andrew M. Freiberg, Judge**

_____

### No. E2018-01735-CCA-R3-CD

_____

Defendant, Barenton Barnett, was indicted by the Polk County Grand Jury for theft of property valued at $60,000 or more, a Class B felony. Defendant pleaded no contest to vandalism of more than $2,500, a Class D felony, in exchange for a sentence of three years to be suspended on probation, and Defendant was ordered to pay $8,207 in restitution. Defendant sought to withdraw his plea. Following an evidentiary hearing, the trial court denied Defendant's motion. Defendant appeals. Having reviewed the record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jessica M. Van Dyke, Nashville, Tennessee, and Brennan M. Wingerter, Knoxville, Tennessee, for the appellant, Barenton Barnett.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Stephen Davis Crump, District Attorney General; and Joseph Hoffer, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Plea hearing*

At the plea hearing on March 26, 2018, Defendant stated that he wished to plead no contest. Defendant stated that he was satisfied with his trial counsel's representation and that she had reviewed all discovery materials with him. Defendant added that trial counsel had discussed with him the strengths and weaknesses of his case, any defenses he

might assert, and the potential range of punishment.  The trial court asked Defendant, "Did [trial counsel] advise you of how a jury trial could go here in Polk County if you still desired one?"  Defendant responded, "Yes."  The trial court explained, "when you enter a plea, the case will resolve with finality and there won't ever be another court date[,]" to which Defendant responded that he understood.

Defendant stated that he did not "like the plea," but that it was "in [his] best interests."  Defendant stated, "a felony is about to ruin my life."  Defendant indicated that he was not threatened or coerced to enter his plea and that he was not under the influence of any intoxicant.  The following is a colloquy between the trial court and Defendant:

> THE COURT:  Do you also understand that if you continued to maintain that not guilty plea, the only way you could be convicted of this or any crime is if you exercised your absolute, guaranteed, constitutional right to trial by jury?
>
> DEFENDANT:  I mean, I don't see any other African[-]American man here, so what would my jury be like?  I feel like I wouldn't have a fair trial if I did have a trial.
>
> THE COURT:  Well –
>
> DEFENDANT:  That's why this is in my best interests.  I can't gamble with my freedom.  I've got a family to take care of.

Defendant explained that he had lost his job as a result of his arrest, and stated:

> DEFENDANT:  . . . . I understand what's going on, sir, but this is, this is in my best interests, so I have to run with it.
>
> THE COURT:  Well, I mean, I don't want to take a plea that's not knowingly, freely, and voluntarily being entered.
>
> DEFENDANT:  I don't want to take a chance of losing my freedom for so many years.

The trial court then explained to Defendant:

> THE COURT:  At a jury trial, citizens of Polk County [] get summonsed to court as prospective jurors, are then questioned by the Court and the lawyers for both sides to ensure that the 12 citizen jurors selected to hear

the proof in your case are as fair and impartial as humanly possible. The 12 citizens selected actually sit in those padded chairs right over there. They listen to your entire case, all the facts, evidence, proof, all of the sworn witness testimony. At the conclusion or end of your case, those citizens, in order to find you guilty of any crime, would have to come back into court and unanimously declare your guilt beyond a reasonable doubt. That's the highest standard in the law.

The trial court explained that Defendant was "presumed innocent," that the State carried the burden of proof at trial, that Defendant had the right to cross-examine the State's witnesses at trial, that Defendant could not be compelled to testify at trial, but that he had the right to testify if he so chose, and that Defendant could subpoena witnesses to testify in his behalf. The trial court again asked if Defendant wished to proceed to trial, and Defendant replied, "No, sir."

The prosecutor stated the factual basis for the charge as follows:

The facts of this case are that on August 11th, 2015, that Herman and Beverly Manzer who were moving from . . . the Rio Grande area of New Mexico to Murphy, North Carolina – had a trailer behind their truck that was filled with personal belongings. As they were proceeding eastbound on Highway 64, the trailer broke down, so they left it. Various members of the Polk County Sheriff's Office saw that trailer there. Then on August the 11th, 2015, Deputy Jake Wallace and Brian Epperson were at the takeout, the non-commercial takeout area of the Ocoee River. And when a concerned citizen came to them and pointed out to them that just up in the easterly direction on Highway 64 from where they were located, that there was a trailer that appeared to be subject to a theft – when the officers went to where the trailer was, Your Honor, it was stuck in the pull off area and property from all . . . inside of the trailer was strewn all about the area. The bolts on the locks were cut, and some of the more valuable property from inside the trailer had been loaded into the truck that was before – as I indicated, Your Honor, the truck had a Florida registration, and the trailer had plates from New Mexico.

Upon further investigation, Your Honor, they contacted the owners of the, of the trailer and found out that the folks that were in possession of the trailer, which included this defendant, did not have their permission to move the trailer, and definitely didn't have permission to break into the trailer and to do anything with the property. The amount of damage to the property of the Manzers, Your Honor, was [$8,207.00].

The trial court accepted Defendant's no contest plea to vandalism of more than $2,500, a Class D felony, and imposed an agreed upon sentence of three years to be suspended on probation and payment of $8,207 in restitution.

On April 2, 2018, the trial court received a letter from Defendant in which Defendant requested to withdraw his plea. The trial court construed the letter as a *pro se* motion to withdraw his plea and set the matter for an evidentiary hearing. Defendant retained new counsel and filed a motion to withdraw Defendant's no contest plea pursuant to Rule 32 of the Tennessee Rules of Criminal Procedure.

### *Hearing on motion to withdraw plea*

Trial counsel testified that she had been practicing law since 2008. She worked as a public defender for four years and had been in private practice since leaving the public defender's office in 2012. Trial counsel testified that she had been engaged in the practice of criminal law for her entire career. Trial counsel was appointed to represent Defendant. She testified that she provided Defendant with discovery materials after she received them from the State. Trial counsel estimated that she spoke to Defendant about his case on eight to twelve occasions. In preparation for Defendant's trial, trial counsel obtained the list of the jury panels. Trial counsel researched potential jurors using various social media and news media. Trial counsel testified that she "was looking for potential police bias." Trial counsel noted any "worrisome" findings and identified two potential jurors she was going to "try to strike [ ] during the voir dire." She testified that she was unable to find any information on some of the potential jurors, and Defendant "was upset with [her]." Trial counsel did not recall viewing a Facebook post by the Polk County Sheriff's Office about the incident. She testified that comments by a potential juror on the post would have been important.

Trial counsel was unable to estimate what percentage of the population of Polk County was African-American. Trial counsel testified that Defendant sent her a text message in August, 2017, expressing his concern about "the race issue in terms of jurors" and asking her to request a change of venue to have his case tried in Chattanooga. Trial counsel testified that she lacked sufficient evidence to demonstrate that Defendant could not receive a fair trial in Polk County.

Trial counsel testified that she was unable to meet with Defendant in person to discuss his case because he lived in Clearwater, Florida. She testified that she inquired with the Administrative Office of the Courts about reimbursement for travel expenses to Florida to meet with Defendant, but such expenses would not be covered. She recalled

that Defendant was unable to meet with her in Tennessee due to work and family obligations.

Trial counsel was unaware that in 2016, a Polk County candidate for the United States Congress used the campaign slogan "Make America White Again" or that in 2011, the FBI investigated threats towards an interracial couple in Ducktown. Trial counsel testified that she believed there was a "high probability" that Defendant would be convicted of theft based on the State's proof. She testified that her trial strategy would have been to cross-examine the victims on the condition and value of each item that was stolen. Trial counsel testified that Defendant was ineligible for judicial diversion because of his prior convictions in Florida. She testified that if Defendant had proceeded to trial, she intended to cross-examine the investigating officers about "the fact that they did not take fingerprint evidence." She testified that one of Defendant's co-defendants "wanted to take [responsibility for] the charges," but trial counsel "was concerned that a jury would not believe that one person could have moved all these items, especially some of the heavier items, into the truck on his own."

Defendant testified that he resided in Clearwater, Florida, and he was not familiar with Polk County, Tennessee. Defendant testified that his only prior conviction was "[m]isdemeanor battery [in] 2010." Defendant testified that he spoke to trial counsel about his case by telephone "[t]hree times, tops." He testified that trial counsel did not send him any correspondence other than the discovery packet. Defendant testified that trial counsel never discussed with him a trial strategy or whether or not he should testify at trial. Defendant "was looking forward to a trial." He testified that the jury pool was "all white" and that trial counsel told him that two potential jurors "were white supremacists and if [Defendant went] to trial, most likely [he] would lose." Defendant felt he had only two choices, "I could go to trial in front of an all[-]white jury and most likely lose, like she told me, or I can take a felony charge and lose my rights and a whole bunch of stuff." Defendant testified that he believed pleading no contest was in his best interests because he "didn't want to take the chance of sitting in jail till the day of trial and losing like [he] was told."

On cross-examination, Defendant testified that he understood everything that was asked of him at the plea hearing. Defendant acknowledged that he told the trial court that he was satisfied with trial counsel's performance.

Elizabeth Bryan, Defendant's girlfriend, testified that she had attended court dates with Defendant and had conversations with trial counsel about Defendant's case. Ms. Bryan testified that "the only thing [trial counsel] ever sent [them] was discovery." She testified that trial counsel and Defendant never corresponded by email, and the only phone call she observed between Defendant and trial counsel was to review discovery

and lasted only three or four minutes. She testified that she and Defendant traveled to Tennessee with the expectation that his trial would begin on March 26, 2018. She testified that trial counsel "made it seem like [Defendant was] gonna lose[,]" and that trial counsel stated "it was an all[-]white jury, they're all pro-cop, and she found that two of them were white supremacists and there was no chance." Ms. Bryan understood that Defendant's potential sentence, if convicted as charged, was eight to twelve years' confinement. Ms. Bryan testified that she and Defendant contacted other attorneys immediately after Defendant entered his plea to discuss withdrawing his plea.

Benjamin McGowan, an attorney from Chattanooga, was qualified to testify as an expert in criminal defense litigation. He testified that he had reviewed the plea transcript, the trial court's file, Defendant's letter to the trial court, photographs provided in the State's discovery response, and trial counsel's record of hourly work in Defendant's case. Mr. McGowan testified that in cases where a defense attorney has "a bonafide concern that race would impact in some material way the fairness of the trial[,]" he would request individual voir dire of potential jurors. He testified that a motion for a change of venue would require evidence to support it. Mr. McGowan testified that he was not familiar with the composition of the population of Polk County. Mr. McGowan testified that when a defendant expresses hesitancy or uncertainty during a plea hearing, his practice is to ask for a recess to discuss any concerns with the defendant before proceeding.

On cross-examination, Mr. McGowan testified that he did not speak to Defendant or trial counsel in preparation for the hearing. He testified that he had seen "four or five" photographs provided in discovery, but he had not reviewed any other discovery materials, and he did not know what the State's evidence was against Defendant. Mr. McGowan conceded that he had no knowledge of any fact that could resolve the conflicts in the testimonies of Defendant and trial counsel. Mr. McGowan testified that he had not seen empirical evidence supporting the proposition that racial attitudes are influenced by demographics. He also agreed that a desire to avoid incarceration is a common motivation for a defendant to decide a plea is in his or her best interests.

Documentary evidence from the U.S. Census Bureau from the 2010 census was made an exhibit. This information disclosed that Polk County had a total population of 16,825 people of which 16,397 (97.5 percent) were white and 50 (0.3 percent) were African-American. 233 (1.4 percent) were Hispanic or Latino of any race, 215 (1.3 percent) were of two or more races. Other races categorized were American Indian, Alaskan native, Asian, and Native Hawaiian or other Pacific Islander with a combined population of 113 (0.5 percent).

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion by denying his motion to withdraw his no contest plea because he did not knowingly and voluntarily enter his plea. Defendant contends that the entry of his plea was a manifest injustice because Defendant feared that he could not receive a racially unbiased trial in Polk County, and he entered his plea without the effective assistance of counsel. The State responds that Defendant has failed to demonstrate that a manifest injustice occurred, and the trial court properly denied Defendant's motion.

The standard of review for questions related to the withdrawal of a plea is abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010). This court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

Tennessee Rule of Criminal Procedure 32(f) provides that a guilty plea may be withdrawn before a sentence is "imposed . . . for any fair and just reason." After a sentence is imposed but before the judgment is final, a plea may be withdrawn "to correct manifest injustice." Rule 32(f) makes it clear that "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444 (citing *Crowe*, 168 S.W.3d at 740; *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003)). "The defendant bears the burden of establishing sufficient grounds for withdrawing [a] plea." *Phelps*, 329 S.W.3d at 444; *see State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). In determining whether to grant a motion to withdraw a guilty plea, trial courts "should always exercise . . . discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." *Phelps*, 329 S.W.3d at 444 (internal quotation and citation omitted).

"Manifest injustice" is not defined in the text of Rule 32(f), but courts have identified circumstances that meet the manifest injustice standard that is required for a withdrawal of a plea after sentencing. *State v. Virgil*, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008). Manifest injustice has occurred where: (1) the plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was

denied the effective assistance of counsel in connection with the plea. *Id*. However, a defendant's mere change of heart about pleading guilty or a defendant's dissatisfaction with the punishment that he or she ultimately receives is not manifest injustice. *Crowe*, 168 S.W.3d at 743 (citing *Turner*, 919 S.W.2d at 355). In *Blankenship v. State*, our supreme court set forth the following factors to be considered when determining if a defendant's plea was entered in a knowing, voluntary, and understanding fashion:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

In a very detailed written order denying Defendant's motion to withdraw his no contest plea, the trial court accredited trial counsel and explicitly resolved all conflicts in the testimony "against [Defendant] in favor of, in order, the official transcript of the plea proceedings of March 26, 2018 . . . , the testimony of [trial counsel], and finally the testimony of Mr. McGowan." The trial court found that trial counsel's performance "well exceeded comparative representation in like cases by reasonably competent attorney, most notably demonstrated by her attention to detail in this case." The trial court noted that trial counsel investigated prospective jurors and discovered racial bias of two prospective jurors. The trial court found that trial counsel "met and consulted with [Defendant] numerous times during the pendency of his cases[,]" and that trial counsel adequately investigated "the factual basis of this case," noting that trial counsel interviewed one law enforcement officer involved in the investigation and attempted without success to interview another law enforcement officer in the case. Regarding a change of venue, the trial court found that trial counsel "did not find it appropriate after an informed investigation of the legal burden to establish such a claim." The trial court noted that trial counsel negotiated a plea agreement to the lesser offense of vandalism, and avoided any admittance of guilt and any incarceration. The trial court found that Mr. McGowan's testimony largely supported the strategic decisions of trial counsel. The trial court concluded that Defendant "utterly failed to demonstrate that his trial lawyer's actions or omissions were so significant as to fall below the objective standard of reasonableness under prevailing professional norms in criminal cases."

The trial court found Defendant's testimony not credible. The trial court determined that Defendant wished "to avoid any trial and any potential incarceration." The trial court found that Defendant was of "above average" intelligence and had experience with the criminal justice system. The trial court noted that Defendant "asked extremely probing and intelligent questions" of the court during the plea colloquy, and Defendant "presented to the [c]ourt as a very thoughtful and intelligent individual during the hearing of this [m]otion."

The trial court found that the racial composition of Polk County was "overwhelmingly" Caucasian. The trial court observed that the alleged racial biases of the potential jury would "forever remain a mystery and pure hypothetical" because Defendant opted not to proceed to trial. The trial court concluded that Defendant had failed to show any manifest injustice and that Defendant voluntarily and knowingly entered his plea.

Defendant asserts on appeal that during the plea colloquy, he "clearly and unequivocally expressed concern . . . about his ability to get a fair trial when no other African-Americans were present." Defendant suggests that "the trial court should have refused to accept [Defendant]'s plea because it was based on fear of racial bias." Our review of the plea hearing transcript, however, reveals that when Defendant expressed concern about the racial composition of the jury pool, the trial court carefully explained in detail that Defendant had the right to plead not guilty and proceed to trial. The trial court stated that the potential jurors would be subject to questioning "to ensure that the 12 citizen jurors selected to hear the proof . . . are as fair and impartial as humanly possible." Defendant stated that he believed that entering a no contest plea was in his best interests.

In his brief on appeal, Defendant asserts that his "fear of racial bias at trial was legitimate." At the hearing on Defendant's motion to withdraw his plea, however, Defendant presented no evidence that the entire jury venire or even a substantial portion of the jury venire in Polk County was racially biased. In denying Defendant's motion to withdraw his plea, the trial court concluded that the racial composition of Polk County was a "consideration" that Defendant took into account when determining whether the plea was in his best interest. The trial court concluded, however, that Defendant's primary motivation for entering the plea was his desire to avoid incarceration.

The detailed findings by the trial court go directly to the *Blankenship* factors regarding the relative intelligence of Defendant, his familiarity with criminal proceedings, his opportunity to confer with trial counsel, trial counsel's competency and the extent of her advice to Defendant, and the reasons for Defendant's decision to plead no contest, including his desire to avoid a greater penalty that might result from a jury trial. *Blankenship* is the applicable legal standard for determining if a plea was entered in

a knowing, voluntary, and understanding fashion.  Thus, the trial court applied the relevant factors and correct legal standard as it determined that manifest injustice had not occurred when Defendant entered his plea.  We find that the trial court did not abuse its discretion when denying Defendant's motion.

Regarding Defendant's claim that ineffective assistance of counsel resulted in manifest injustice, Defendant was required to establish that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993).  "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).  To establish the performance prong, a defendant must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases."  *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690.  The court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  To establish the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Defendant asserts that trial counsel's failure to request a change of venue and to prepare for individual voir dire was deficient and induced his plea.  Trial counsel testified that she researched potential racial bias among the jury venire and identified two potential jurors whose views as expressed on social media were concerning.  Trial counsel testified that she would have explicitly asked potential jurors about any bias or prejudices during voir dire.  Trial counsel also testified that she lacked the evidence necessary to support a change of venue.  She testified that she discussed these issues with Defendant in preparation for his trial.  Defendant has presented no evidence upon which a motion for a change of venue would have been granted had Defendant proceeded to trial.  Defendant's expert witness conceded that he was not aware of any empirical evidence demonstrating that potential jurors from a less-diverse region displayed more bias than jurors from a more diverse region.  The trial court accredited trial counsel's testimony and concluded that counsel's performance was not deficient.  We conclude that the trial court did not abuse its discretion in denying Defendant's motion.

CONCLUSION

For the aforementioned reasons, we affirm the judgment of the trial court.

_____

THOMAS T. WOODALL, JUDGE